**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**TERRY BARR SALES, L.L.C.,**

             **Plaintiff(s),**          **CASE NUMBER: 08-10749
HONORABLE VICTORIA A. ROBERTS**

**v.**

**AMTEK METAL INDUSTRIES, INC.,**

             **Defendant(s).**
_____/

**ORDER DENYING DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**I.    INTRODUCTION**

Plaintiff Terry Barr Sales, L.L.C. sued Defendant Amtek Metal Industries, Inc., for breach of representative agreement and failure to pay pre- and post-termination commissions. Defendant moves to dismiss the claim pursuant to FED. R. CIV. P. 12(b)(2). Oral argument was held on September 24, 2008. For the following reasons, the motion is **DENIED**.

**II.    BACKGROUND**

Plaintiff is an independent sales representative active in the automotive industry and based in Southfield, Michigan. Defendant is a Canadian corporation that manufactures automobile parts. In 2005, Plaintiff was representing TorqMaster International, Inc. ("TorqMaster"), a Connecticut manufacturer supplying parts to a Canadian company, Progressive Moulded Products ("PMP"). In the course of Plaintiff's representation of TorqMaster, Plaintiff encountered Zettel Manufacturing ("Zettel"), a company owned by Samir Habash ("Habash"), who is also the owner of Defendant.

When TorqMaster decided to stop manufacturing parts for PMP, in the fall of 2005, the suggestion was made to have Zettel and Defendant supply PMP instead. In November 2005, communicating by e-mail and telephone, Plaintiff and Defendant negotiated and executed a representative agreement ("the Agreement") pertaining to four specific automotive parts production programs. Dated October 11, 2005, the Agreement designated Plaintiff as Defendant's "sole and exclusive sales representative for the sale of the Products in, to and from the Territory;" however, the term "Territory" was only defined as "the PMP program" and "the Summit program." (Pl.'s Br. Supp. Opp'n. Ex. C at 2, 12.) The Agreement also contained a provision titled "Applicable Law and Jurisdiction" which stated:

> This Agreement and any disputes, based on or arising out of the contractual relationship of the parties, which may hereafter be asserted against a part to this Agreement shall be enforced and construed pursuant to the laws of the State of Michigan without giving effect to its conflict of law principles.

(*Id.* at 8.) The Agreement also provided that, in the event of its termination, Plaintiff would be entitled to sales commissions "for the life of the product" on all sales or purchase orders procured while the Agreement was in effect. (*Id.* at 7.)

After the Agreement was executed, PMP transferred its contract with TorqMaster to Zettel and Defendant. Subsequently, Zettel ceased operations, and Defendant took over the entire PMP program. On February 1, 2007, Plaintiff and Defendant executed a First Amendment to the Agreement ("the Amendment"). The Amendment removed Zettel as a party to the Agreement and added nine potential clients to Plaintiff's assigned territory, at least eight of which were Michigan-based companies. On January 22, 2008, Defendant terminated the Agreement, indicating that it would no longer pay

2

any commissions to Plaintiff. Plaintiff filed suit under the Michigan Sales Representatives Commission Act ("SRCA"), MICH. COMP. LAWS. ("M.C.L.") § 600.2961, seeking $100,000.00 in damages for unpaid sales commissions, penalty damages and attorneys' fees.

Plaintiff alleges that, in the course of its representation, it made sales calls on all the Michigan companies listed in the Amendment for the purpose of generating new business for Defendant. According to Plaintiff, Mr. Habash accompanied its representatives on several sales calls to Michigan clients; Plaintiff supplied a list of occasions on which Mr. Habash allegedly visited the state for business purposes between 2005 and 2007. (Pl.'s Br. Supp. Opp'n Ex. G). Plaintiff further alleges that it procured two orders for Defendant's products from clients in Michigan. The first sale was to Lapeer-based Mold Masters Co. (*Id.* at Ex. H.) In its brief, Plaintiff asserts that "the commissions due . . . on the Mold Masters business are at issue in this lawsuit," but counsel for Plaintiff appeared to disclaim this fact at oral argument. (*Id.* at 4.) The second order was to Irvin Automotive Products ("Irvin") in Pontiac. (*Id.* at Ex. I.) The Court notes that, although Exhibit I is entitled "Purchase Order," it is not an actual order for Defendant's products, but states instead that its "purpose . . . is to establish piece price." (*Id.*) Also, while the form bears Irvin's Pontiac address, it provides for the order to be invoiced and shipped to Irvin's facility in Del Rio, Texas. Plaintiff does not allege that any commissions are owed pursuant to this sale. At oral argument, Plaintiff mentioned for the first time a third sale, this one to Summit Polymers, Inc. ("Summit"), in Kalamazoo. Plaintiff supplied an affidavit from Account Manager William Jerome, Jr., stating that he gave Summit a quote for a heavy duty truck hinge manufactured by

3

Defendant. Mr. Jerome claims that, after the Agreement was terminated, Summit awarded Defendant the truck hinge contract, but Defendant refused to pay Plaintiff any commissions. Mr. Jerome estimates that Plaintiff's commissions on this sale could exceed $100,000 over the life of the contract. Finally, Mr. Jerome states that Summit awarded, or will award Defendant other contracts that Plaintiff helped procure.

Defendant's Brief in Support of Motion asserts that it never sold or delivered any goods in Michigan, and that the commissions allegedly owed relate solely to parts sold and delivered in Canada. (Def.'s Br. Supp. Mot. 4, 6, 7, Ex. A at ¶¶ 3, 7.) Defendant's Reply to Plaintiff's Opposition is slightly less categorical. Defendant admits that Mr. Habash traveled to Michigan "three or four times," but contends that this was at Plaintiff's invitation and that "nothing but aggravation and expense resulted from these isolated and attenuated trips." (Def.'s Reply Supp. Mot. 4-5.) Defendant also acknowledges that it sold products to Mold Masters and Irvin, but denies that either sale was procured by Plaintiff. Defendant explains that it "overlooked [the Mold Masters sale] in its initial brief because this sale was so small and insignificant," and that the parts sold to Irvin were shipped to Texas, not Michigan. (*Id.* at 5.)

## III. ANALYSIS

"In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction." *Air Products & Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (*citing Serras v. First Tennessee Bank N.A.*, 875 F.2d 1212, 1214 (6th Cir. 1989). When confronted with a properly supported Rule 12(b)(2) motion, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."

4

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (*citing Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974)). A court reviewing such a motion may, in its discretion, decide the motion solely upon written submissions and affidavits, allow limited discovery to aid in its decision, or hold an evidentiary hearing to resolve any disputed facts. *Id.* (*citing Serras*, 875 F.2d at 1214). In the absence of an evidentiary hearing, the plaintiff bears only the "relatively slight" burden of making a *prima facie* showing of jurisdiction. *Air Products*, 503 F.3d at 549 (*quoting American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Since there has been no evidentiary hearing in this case, the Court must view the pleadings and affidavits in the light most favorable to the plaintiff and may not weigh any controverting assertions submitted by the party seeking dismissal. *Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (*citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)); *Theunissen*, 935 F.2d at 1459. The motion may be granted only if "all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262 (*citing Theunissen*, 935 F.2d at 1459).

The Court held oral arguments on Defendant's motions, but does not find there to be any disputed facts. Thus, the Court bases its decision on the pleadings, the affidavits, and the arguments presented.

**1.   Jurisdictional standard.**

A federal court sitting in diversity may assert personal jurisdiction over a non-resident defendant only to the extent permitted under the law of the forum state. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). In Michigan, the exercise of personal jurisdiction over a non-resident defendant is proper if (1) the

5

defendant's actions place it within reach of Michigan's long-arm statutes, and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Green v. Wilson,* 455 Mich. 342, 347 (1997).

While many courts interpret Michigan's long-arm statutes to extend jurisdiction as far as due process permits, *see, e.g., Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) ("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one"); *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150-51 (6th Cir. 1990) ("Th[e statute's] limited personal jurisdiction provision extends the state's jurisdiction to the limits permitted by due process requirements"), it is still necessary for this Court to first determine whether the long-arm statute permits jurisdiction to be asserted over Defendant. *See Green*, 455 Mich. at 350-51 ("The coextensive nature of Michigan's long-arm jurisdiction becomes pertinent only if the particular acts or status of a defendant first fit within a long-arm statute provision"); *Frankenmuth Mutual Insurance Co. v. Appalachian Underwriters, Inc.*, No. 03-10193, 2004 U.S. Dist. LEXIS 11465, at *11-12 ( E.D. Mich. June 21, 2004) (unpublished) ("Although this Court generally must follow Circuit construction of state law, even if it believes it erroneous, it need not do so if an intervening decision of the supreme court of that state makes it clear that the Circuit's previous construction of state law was incorrect") (internal citations omitted).

Plaintiff contends that Defendant's activities in Michigan are sufficient for the Court to find jurisdiction under Michigan's general personal jurisdiction statute, M.C.L. § 600.711. In the alternative, Plaintiff argues that Defendant should fall under the limited

6

personal jurisdiction provision of M.C.L. § 600.715.

General jurisdiction exists when "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third National Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (*citing Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). In a limited or specific jurisdiction case, by contrast, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Third Nat'l Bank,* 882 F.2d at 1089 (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Because limited jurisdiction may properly be asserted over Defendant, the Court does not address whether general jurisdiction exists. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) ("We decline to decide the broader issue of whether general jurisdiction exists . . . because [plaintiff] has presented a prima facie case that limited jurisdiction is present").

### A.     Limited Personal Jurisdiction under M.C.L. § 600.715

Michigan's long-arm statute permits asserting limited personal jurisdiction over corporations as follows:

> The existence of *any* of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation *arising out of* the act or acts which create any of the following relationships:
>    (1)  The transaction of *any* business within the state.
>    (2)  The doing or causing any act to be done, or consequences to occur,

7

>     in the state resulting in an action for tort[; or]
>     . . .
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

M.C.L. § 600.715 (emphasis added).

### i. Transaction of Business Within the State

The Michigan Supreme Court emphasizes that the term "any business" must be broadly construed, and includes even "the slightest" transaction of business. *Sifers v. Horen*, 385 Mich. 195, 199 n.2 (1971). Since the statute fails to define "transacting business," Michigan courts rely on dictionary definitions of these terms.

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit."

*Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 430 (2001) (*quoting Random House Webster's College Dictionary* (1997)). *See also Electrolines, Inc. v. Prudential Assurance Co.*, 260 Mich. App. 144, 168 (2003).

Taken as a whole, Defendant's contacts with Michigan are sufficient to meet Michigan's broad "transaction of any business" standard. Defendant entered into an agreement designating Plaintiff as its "sole and exclusive sales representative" for a Territory which, as defined by the Amendment, includes several Michigan businesses. (Pl.'s Br. Supp. Opp'n. Ex. C at 2, Ex. E at 2.) Furthermore, Plaintiff alleges that pursuant to the Agreement, Mr. Habash visited the state and participated in sales calls to generate business from several potential clients. Defendant appears to concede that it made at least two sales to Michigan-based companies, one of which resulted in products being shipped to Michigan. Finally, Plaintiff claims that Summit awarded

Defendant at least one contract that Plaintiff helped procure.

Defendant argues that these relationships are insufficient to qualify as business transactions because none of its sales to any Michigan-based companies was the result of Plaintiff's representation. The Sixth Circuit made clear that

> [a] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal. We adopted this rule . . . in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts, as the Appellee has done in the case before us.

*Theunissen*, 935 F.2d at 1459 (*citing Serras*, 875 F.2d at 1214) (other citations omitted). Therefore, at this stage of the proceedings and without the benefit of an evidentiary hearing, the Court must "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras*, 875 F.2d at 1214; *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). In the alternative, Defendant claims that whatever relationships may have occurred were too attenuated to fall under M.C.L. § 600.715(1). However, the *Sifers* court's reading of the term "any business" leaves no room for doubt: "The word 'any' means just what it says. It includes 'each' and 'every'. It comprehends 'the slightest'." *Sifers*, 385 Mich. at 199 n.2. Thus interpreted, there can be no question that Defendant's contacts in Michigan qualify as business transactions within the meaning of M.C.L. § 600.715(1), and the Court need not consider whether the other subsections apply.

### ii. Relation of Plaintiff's Claims to Defendant's Activities

Notwithstanding whether a defendant transacts any business in the state, a court may not assert specific or limited jurisdiction over the defendant unless the cause of action arises from the transacted business. *See Lanier v. American Board of*

9

*Endodontics*, 843 F.2d 901, 908 (6th Cir. 1988) ("The 'arising out of' requirement is the second criterion for establishing limited personal jurisdiction" under Michigan's long-arm statute).  In *Lanier*, the court described two theories under which this requirement could be met.  First, a plaintiff's claim may be deemed to arise out of defendant's actions if they were "made possible only by [defendant's] transaction of business with [plaintiff]." *Id.* at 909 (*quoting In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 231 (6th Cir. 1972).  In the alternative, Lanier explained that "if a cause of action lies in the 'wake' of the business transaction, it arises from it."  *Lanier*, 843 F.2d at 909 (*citing In re: Oil Spill by Amoco Cadiz off Coast of France*, 699 F.2d 909, 915 (7th Cir. 1983), *cert. denied*, 464 U.S. 864 (1983)).

Plaintiff's Complaint lists three causes of action: (1) breach of contract, (2) declaratory judgment of the parties' rights and liabilities with respect to the Agreement, and (3) violation of the SRCA.  All of these claims result from the parties' signing of the Agreement, and from sales allegedly made pursuant to it.  Without the Agreement, Plaintiff would have no basis upon which to seek relief.  Thus, Plaintiff's claims properly "arise from" Defendant's contacts in Michigan, and the second prong of M.C.L. § 600.715(1) is met.

### C. Due Process Considerations

Even if Defendant's actions place it within the range of Michigan's long arm statute, the Court may not exercise personal jurisdiction if doing so would violate the Due Process guarantees of the United States Constitution.  *See Theunissen*, 935 F.2d at 1459; *Green*, 455 Mich. at 351.

The involvement of a foreign defendant creates an additional concern: it requires

the Court to consider "the procedural and substantive policies of other nations whose interests are affected by [its] assertion of jurisdiction." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 115 (1987). Accordingly, we bear in mind as we proceed the Supreme Court's admonition in *Asahi*:

> In every case . . . those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."

*Id.* (*citing U.S. v. First National City Bank*, 379 U.S. 378, 404 (1965)).

The Sixth Circuit applies a three-factor test to determine whether limited jurisdiction may constitutionally be exercised over a non-resident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989); *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The finding of the first two elements creates an inference that the third factor is also satisfied. *CompuServe*, 89 F.3d at 1268. However, "failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK*, 885 F.2d at 1303.

### i. Purposeful Availment

To establish the purposeful availment prong, Plaintiff must show that Defendants had sufficient "minimum contacts with [the forum state] such that maintenance of the

11

suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Burger King*, 471 U.S. at 475; *CompuServe,* 89 F.3d at 1263. The Supreme Court has often repeated that unilateral actions by a plaintiff claiming a relationship with a non-resident defendant "cannot satisfy the requirement of contact with the forum State." *Helicopteros Nacionales*, 466 U.S. at 417; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Nevertheless, purposeful availment does not require that the defendant be physically present in the forum state. *Burger King*, 471 U.S. at 476. Rather, "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475 (emphasis in original) (*citing McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)).

The Supreme Court has had several opportunities to discuss the exercise of personal jurisdiction with respect to interstate contractual relations. In *Burger King*, the Court emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473 (*quoting Travelers Health Association v. Virginia*, 339 U.S. 643, 647 (1950)). The Court observed that

> where the defendant "deliberately" . . . has created continuing obligations between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his

12

> activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475-476. However, the Court summarily rejected the notion that, standing alone, a single contract could automatically establish sufficient minimum contacts in the forum state. *Id.* at 478. Instead, the Court recommended the use of

> a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* at 479 (*quoting Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317 (1943)).

A review of the parties' written submissions and affidavits in light of the three *Burger King* factors supports the conclusion that Defendant's actions created a substantial connection with the state of Michigan. First, the parties started with a relatively limited contract (in which Plaintiff represented Defendant only with regards to the PMP deal) and progressed to a broader agreement (with Plaintiff serving as Defendant's exclusive representative to at least eight companies located in Michigan). The decision to extend the terms of the original Agreement can be seen to reflect an intent to pursue an ongoing relationship, and perhaps to expand it further in the future. Concerning the second factor, the very nature of a representation agreement is to create "continuing relationships and obligations" between the parties; in this case, the Agreement created a clear obligation for Plaintiff to provide services to Defendant in the future. Moreover, the fact that the Agreement was to be governed by Michigan law also

13

suggests that Defendant sought to "invoke[] the benefits and protection of the state." *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971) (internal quotations omitted). Finally, based on Plaintiff's submissions, it appears that the majority of Mr. Habash's alleged business trips to Michigan occurred after the Amendment was signed in February 2007. (Pl.'s Br. Supp. Opp'n. Ex. G.) This insight into the parties' course of dealing, although limited, indicates that they contemplated expanding their relationship.

Based on these considerations, Defendant can properly be found to have purposefully availed himself of doing business in Michigan. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("[A] nonresident defendant [who] transacts business by negotiating and executing a contract via telephone calls and letters to [a resident of the forum state] purposefully avail[s] himself of the forum by creating a continuing obligation in [the forum state]"); *North Pointe Dealings, Inc. v. Argo International, Inc.*, No. 07-10298, 2007 U.S. Dist. LEXIS 48103, at *12-13 (E.D. Mich. July 3, 2007) (unpublished) (finding purposeful availment where a Minnesota defendant, after multiple communications, agreed to procure a letter of credit for a Michigan plaintiff, and plaintiff agreed to reimburse defendant for the cost of the letter of credit).

### ii. Claims "Arise From" Defendant's Activities in the Forum

Due process mandates that Plaintiffs' claims properly "arise from" the Defendant's in-state actions. This requirement is met as long as "[D]efendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe*, 89 F.3d at 1267. The Sixth Circuit has several times noted that this is a "lenient standard." *Air Products*, 503 F.3d at 553; *Bird*, 289 F.3d at 875. Plaintiff's cause of

14

action need not "formally 'arise from' defendant's contacts with the forum;" instead it suffices that it "have a substantial connection with the defendant's in-state activities." *Third Nat'l Bank*, 882 F.2d at 1091; *Southern Machine*, 401 F.2d at 384 n.27.

As discussed above, the Agreement forms the basis of Defendant's connection with Michigan, and Plaintiff's claims all relate to this contract and to the parties resulting obligations. "[I]f the cause of action is for breach of th[e] contract [by which the defendant has availed itself of the forum state,] then the cause of action naturally arises from the defendant's activities in [the forum]. *Cole*, 133 F.3d at 436 (*citing CompuServe*, 89 F.3d at 1267; *In-Flight Devices*, 466 F.2d at 229). Accordingly, Plaintiff's claims may properly be said to "arise from" Defendant's in-state activities. *See North Pointe Dealings*, 2007 U.S. Dist. LEXIS 48103, at *13.

### iii. Reasonable Exercise of Jurisdiction

In the last step of the analysis, the Court must determine whether, on the facts of this case, the exercise of jurisdiction is reasonable. *Southern Machine*, 401 F.2d at 381. Since the "purposeful availment" and "arising from" elements have been met, Defendant's burden is correspondingly increased to rebut this part of the test. *See Cole*, 133 F.3d at 436 ("[W]hen we find that a defendant . . . purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper) (*citing CompuServe*, 89 F.3d at 1268). The Supreme Court has identified several relevant factors in this inquiry, notably "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *American Greetings*, 839 F.2d at 1169-1170 (*citing Asahi*,

15

480 U.S. at 113).

Defendant correctly notes that, as a foreign company, it is entitled to some deference under the reasonableness prong of the analysis. In *Asahi*, the Supreme Court underlined the "unique burdens" that come with defending a case in a foreign legal system, and recommended that they be given "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." 480 U.S. at 114. *Asahi* dealt with a Japanese defendant however; a more appropriate comparison is with *Aristech Chemical International Ltd. v. Acrylic Fabricators, Ltd.*, which features a party from Defendant's home province of Ontario, Canada, challenging the specific jurisdiction of a Kentucky court. 138 F.3d 624, 626 (6th Cir. 1998). Assessing the severity of the defendant's burden, the Sixth Circuit stated:

> First, only a short plane flight separates Ontario from Kentucky. This is not a case where the exercise of jurisdiction requires a company to travel from the other side of the world, or even across the Atlantic. Simply stated, the distance between Ontario and Kentucky is not overly burdensome. . . . [M]odern methods of transportation and communication have [also] significantly ameliorated the burden on a Canadian corporation litigating in the United States. Moreover, a Canadian defendant litigating in the United States finds a judicial system rooted in the same common law traditions as that of Canada. In sum, then, the exercise of personal jurisdiction does not impose a heavy burden on [the defendant].

*Id.* at 628-29 (internal quotes and citations omitted). These observations all apply here, even more so since only 300 miles separate Waterloo, Ontario, from Detroit. *See also Theunissen*, 935 F.2d at 1462 (upholding this Court's limited personal jurisdiction over a defendant from Windsor, Ontario).

By contrast, Michigan arguably has a significant interest in seeing this lawsuit resolved in its courts: Plaintiff is a Michigan corporation; the Agreement is to be

construed according to Michigan laws; a substantial portion of the contract was to be performed in Michigan. As for Plaintiff, it has alleged damages in excess of $100,000 from Defendant's refusal to pay commissions owed under the Agreement, giving it an undeniable interest in obtaining relief. Even with the deference owed to foreign corporations, these factors outweigh the limited burden Defendant would incur. The Court's exercise of limited personal jurisdiction is not unreasonable. *See Aristech Chemical*, 138 F.3d at 629; *Theunissen*, 935 F.2d at 1462.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Defendant shall file an answer to the complaint by **October 17, 2008.**

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

**Dated: October 2, 2008**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 2, 2008.**
>
> **s/Carol A. Pinegar**
>
> **Deputy Clerk**

17